**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY ANDREWS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:15-cv-00684-WKW-SRW** |
| | ) | |
| **CITY OF HARTFORD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant the City of Hartford submits this Memorandum in support of its motion to dismiss for failure to state a claim.

## I.  INTRODUCTION

Plaintiff brings this action against his former employer, the City of Hartford, under the Americans with Disabilities Act (the "ADA").  (Doc. 1 at 1, ¶ 1.)  The Complaint alleges Plaintiff was subjected to unlawful discrimination and retaliation in violation of his rights under the ADA.  (Doc. 1 at 5-6, ¶¶ 33-47.)  This Memorandum explains why the Complaint does not state a claim upon which relief can be granted.

## II.  THE COMPLAINT'S FACTUAL ALLEGATIONS[1]

According to the Complaint, Plaintiff has a disability in the form of diabetes.  (Doc. 1 at 2, ¶ 4.)  Plaintiff was diagnosed with that condition thirty

---

[1] Defendant recites the Complaint's factual allegations because they are the operative facts at the motion-to-dismiss stage.  See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.").  They are not the actual facts.

years ago.  (Doc. 1 at 2, ¶ 6.)  Plaintiff began his employment with the City of Hartford in 2009 and held the position of paramedic.  (Doc. 1 at 2, ¶ 5.)

At the time of his termination, Plaintiff was reliant on a diabetic pump.  (Doc. 1 at 2, ¶ 8.)  Between January and February 2015, Plaintiff allegedly requested "reasonable accommodations including sensitivity training with his co-workers and intervention to stop harassment and bullying about his diabetes and diabetic pump."  (Doc. 1 at 2, ¶ 9; Doc. 1 at 4, ¶ 30.)  According to Plaintiff, the City did not provide the requested accommodations.  (Doc. 1 at 2, ¶ 10.)  Plaintiff does not describe the so-called "harassment and bullying" he claims to have experienced.  (Doc. 1 at 2, ¶ 9.)  Plaintiff also does not identify the person to whom he allegedly made his request.  (Doc. 1 at 2, ¶ 9.)

According to the Complaint, Plaintiff performed his duties satisfactorily until his termination on February 3, 2015.  (Doc. 1 at 2, ¶ 7.)  Plaintiff alleges he was wrongfully accused of poor job performance as a pretext for unlawful termination.  (Doc. 1 at 3, ¶ 13.)  Plaintiff also alleges the City retaliated against him because he requested accommodations.  (Doc. 1 at 4, ¶ 25.)

The Complaint alleges Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on May 21, 2015.  (Doc. 1 at 4, ¶ 26.)  Plaintiff did not attach the charge to his Complaint, but the City has attached it to this Memorandum.  (Ex. A.)  The charge is date-stamped June 18, 2015, and the date of June 16, 2015, appears beside what purports to be

the charging party's signature.[2]  (Ex. A.)  In its entirety, the charge's narrative states:

> I have a disability.  I have worked for Respondent since September 2009 as a Paramedic.  On February 3, 2015, Andy Hovey (Fire Chief) terminated my employment.  I believe I was terminated because of my disability.
>
> On February 3, 2015, Hovey informed me that I was terminated because on January 26, 2015, as the senior attendant on a call to the Police Department, I failed to take control.
>
> I believe I was discriminated against in violation of Title I of the Americans with Disabilities Act Amendments Act of 2008.

(Ex. A.)  The charge provides no factual basis to support Plaintiff's professed belief that Chief Hovey terminated him because of a disability.

Above the charge's narrative appear the words "DISCRIMINATION BASED ON (Check appropriate box(es).)."  (Ex. A.)  Plaintiff marked only the box labeled "DISABILITY."  (Ex. A.)  Although the form provided a box labeled "RETALIATION," Plaintiff did not mark it.  (Ex. A.)  The charge does not mention a hostile work environment, retaliation, or the denial of a request for a reasonable accommodation.  (Ex. A.)  The charge alleges only that Plaintiff believes he "was terminated because of [his] disability."  (Ex. A.)

On June 22, 2015, the EEOC issued a dismissal and notice of rights. (Doc. 1 at 4, ¶ 27; Doc. 1-1 at 1.)  In pertinent part, the notice states:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

---

[2] The signature is illegible.  (Ex. A.)

(Doc. 1-1 at 1.)

According to PACER, Plaintiff filed this lawsuit on September 18, 2015. (Doc. 1 at 1.)  The Complaint contains two counts.  Count I alleges the City discriminated against Plaintiff by terminating him because of a disability. (Doc. 1 at 5, ¶¶ 33-39.)  Count II alleges the City failed to provide Plaintiff reasonable accommodations and retaliated against him in violation of the ADA. (Doc. 1 at 6, ¶¶ 40-47.)  The Complaint does not actually assert a hostile work environment claim.  (Doc. 1.)  Although paragraph 1, on page 1, declares the intention to assert a state law claim for intentional infliction of emotional distress, (Doc. 1 at 1, ¶ 1), the Complaint does not actually include that claim.

The Complaint seeks compensatory damages for:

a) "double back pay, including fringe benefits," (Doc. 1 at 7, ¶ 51);

b) "front pay . . . until [Plaintiff's] planned retirement age of 70, (Doc. 1 at 7, ¶ 52);

c) "liquidated damages," (Doc. 1 at 7, ¶ 53);

d) "three times the economic damages for the emotional distress [Plaintiff allegedly] suffered," (Doc. 1 at 7, ¶ 54);

e) "compensatory damages to [Plaintiff's] family members for loss of consortium with him," (Doc. 1 at 7, ¶ 55); and

f) "the medical costs incurred for lack of insurance and life insurance," (Doc. 1 at 7, ¶ 56).

The Complaint also seeks punitive damages.  (Doc. 1 at 7, ¶ 57).  The Court should dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

4

### III.  THE MOTION-TO-DISMISS STANDARD

According to Rule 8 of the Federal Rules of Civil Procedure, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  The Complaint does not meet Rule 8's standard for any claim.

Rule 12(b)(6) permits a party to raise by motion the defense of "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

"A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations.  The district

court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).

"Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. When the allegations of a complaint stop short of excluding "more likely explanations" or an "obvious alternative explanation," the complaint does not state a plausible claim for relief. Iqbal, 556 U.S. at 682, 129 S. Ct. at 1951-52; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 567, 127 S. Ct. 1955, 1972 (2007). A pleading also does not satisfy the requirements of Rule 8 when it merely "le[aves] open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968. "[F]irm application of the Federal Rules of Civil Procedure will ensure that [government] officials are not harassed by frivolous lawsuits." Butz v. Economou, 438 U.S. 478, 508, 98 S. Ct. 2894, 2911 (1978).

## IV.  THE CHARGE OF DISCRIMINATION AND RIGHT TO SUE LETTER

The Court may consider the charge of discrimination and the right to sue letter without converting this motion to dismiss into a motion for summary judgment. The right to sue letter is attached to the Complaint. (Doc. 1-1.) The Court may consider an exhibit attached to the Complaint, because it is a part of the Complaint for all purposes. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all

purposes."); see also F.T.C. v. AbbVie Products LLC, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage, we consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments."); Kinsey v. MLH Fin. Servs., Inc., 509 F. App'x 852, 853 (11th Cir. 2013) ("Exhibits that are attached to a pleading are considered part of the pleading for all purposes."). Based on Rule 10(c), the right to sue letter is a part of the Complaint for all purposes.

The Complaint also incorporates the charge of discrimination and the right to sue letter by reference. (Doc. 1 at 4, ¶¶ 26-27.) When a complaint incorporates a document by reference, the Court may consider the contents of that document on a motion to dismiss. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 1499, 2509 (2007) (holding that on motion to dismiss, courts may consider "documents incorporated into the complaint by reference"). The Complaint incorporates both documents by reference. In paragraph 26, on page 4, the Complaint refers to the charge of discrimination. (Doc. 1 at 4, ¶ 26.) In paragraph 27, on page 4, the Complaint refers to the right to sue letter. (Doc. 1 at 4, ¶ 27.) Because the Complaint incorporates both documents by reference, the Court may consider those documents without converting the motion to dismiss into a motion for summary judgment.

The Court may also consider the charge of discrimination and the right to sue letter on the separate ground that they are central to Plaintiff's claims and their authenticity cannot be challenged. See SFM Holdings, Ltd. v. Banc of

Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (holding court may "consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."). In Nixon v. United Parcel Service, Inc., the United States District Court for the Middle District of Georgia held "[t]he Court can consider the EEOC charge when reviewing the motion to dismiss because the charge is central to Plaintiff's claims and is undisputed.  Courts regularly consider EEOC charges when ruling on motions to dismiss, and the Court will do so here."  No. 7:13-cv-38(HL), 2013 WL 6815719, at *2 (M.D. Ga. Dec. 24, 2013) (Lawson, J.).

Federal district courts in Alabama routinely follow this practice.  See Barclay v. First Nat'l Bank of Talladega, No. 1:14-CV-01573-KOB, 2014 WL 5473829, at *2 n.1 (N.D. Ala. Oct. 28, 2014) (Bowdre, C.J.) ("The court may consider the 2013 EEOC charge on a motion to dismiss without converting the motion to one for summary judgment because the 2013 EEOC charge is central to Barclay's complaint and both parties accept the 2013 EEOC charge as authentic."); Caetio v. Spirit Coach, LLC, 992 F. Supp. 2d 1199, 1208 (N.D. Ala. 2014) (Smith, J.) ("As the EEOC charges are referenced in plaintiffs' complaint and are central to their claims, this court will consider those forms on defendant's motion to dismiss without converting the motion into a motion for summary judgment."); Stovall v. Hancock Bank of Ala., Inc., No. 2:12-CV-1036-MEF, 2013 WL 3357851, at *1 (M.D. Ala. July 3, 2013) (Fuller, J.) ("Because Stovall references her EEOC charge and right-to-sue letter in her Complaint, and because these documents are central to her discrimination

8

claims and undisputedly authentic, the Court may consider them at this stage in the proceedings without converting Hancock Bank's motion to dismiss into one for summary judgment."); Butler v. Cleburne Cnty. Comm'n, No. 1:10-CV-2561-PWG, 2012 WL 2357740, at *8 n.11 (N.D. Ala. Jan. 17, 2012) (Greene, Mag.) ("the court may consider the materials submitted to the EEOC as a purported charge and the right-to-sue notice, which are referenced in the Complaint, without converting the instant motions to dismiss to ones for summary judgment").  Based on these authorities, the Court may consider the charge of discrimination and right to sue letter without converting this motion to dismiss into a motion for summary judgment.

## V.  ANALYSIS

This section explains why the Complaint does not state a claim against the City of Hartford upon which relief can be granted.

### A.  *The Court Should Dismiss the Complaint In Its Entirety Because It Does Not Plausibly Demonstrate that Plaintiff Has a Disability Within the Meaning of the ADA*

The Complaint does not plausibly demonstrate that Plaintiff has a disability within the meaning of the ADA:

The term "disability" means, with respect to an individual –

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1) (Westlaw 2015).

The Complaint does not allege that Plaintiff's diabetes "substantially limits one or more [of his] major life activities."   42 U.S.C. § 12102(1)(A) (Westlaw 2015).   The Eleventh Circuit addressed this situation in <u>Collado v. United Parcel Service Co.</u>:

> Starting with alternative (A) of the definition, it is undisputed that Collado suffers from insulin-dependent diabetes, which is a physical impairment for ADA purposes, <u>see</u> 45 C.F.R. pt. 84 App. A, subpart (A)(3) (defining diabetes as an impairment).   So, he satisfies the first half of the alternative (A) definition of "disability." That is not enough, because the other half of the definition requires that the impairment substantially limit one or more of his major life activities; that determination must be made on a case-by-case basis.

419 F.3d 1143, 1155 (11th Cir. 2005).   In <u>Prince v. Illinois Department of Revenue</u>, the United States District Court for the Northern District of Illinois held a plaintiff's "allegation that he has diabetes does not mean that he is disabled under the ADA, because he has not alleged that his diabetes limited or restricted his ability to perform major life activities."   73 F. Supp. 3d 889, 893 (N.D. Ill. 2010) (Kendall, J.).   Likewise in this case, the Complaint does not plausibly demonstrate that Plaintiff's diabetes "limited or restricted his ability to perform major life activities."   <u>Id.</u>

The Complaint also does not plausibly demonstrate that Plaintiff had a record of impairment.   "[A] mere diagnosis of an impairment, without more, is not enough for § 12102(1)(B) purposes."   <u>Tadder v. Board of Regents of Univ. of Wisconsin Sys.</u>, 15 F. Supp. 3d 868, 886 (W.D. Wis. 2014) (Conley, J.).   "[T]he record-of-impairment standard is satisfied only if [the employee] actually suffered a physical impairment that substantially limited one or more of [his]

10

major life activities." <u>Hilburn v. Murata Electronics N. Am., Inc.</u>, 181 F.3d 1220, 1229 (11th Cir. 1999).  The Complaint does not allege that Plaintiff had a record of impairment.

Finally, the Complaint does not plausibly demonstrate that Plaintiff was regarded as having an impairment:

> A plaintiff seeking to qualify as disabled under subsection (C) of § 12102(1) must show that the defendant employer believed that she suffered from a physical or mental impairment that substantially impaired her ability to work.  It is not enough, however, for such a plaintiff to prove that the defendant believed that her impairment limited her ability to do a particular job.  Rather, she must show that the defendant thought that her impairment was serious enough to affect her ability to perform a class or range of jobs.

<u>Kotwica v. Rose Packing Co.</u>, 637 F.3d 744, 749 (7th Cir. 2011).  Count I does not contain any allegations which plausibly demonstrate that anyone at the City of Hartford regarded Plaintiff as having an impairment that "was serious enough to affect [his] ability to perform a class or range of jobs." <u>Id.</u>

In summary, Plaintiff does not meet the definition of "disability" under 42 U.S.C. § 12102(1).  The Court should dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.

**B.   *The Court Should Dismiss Count I Because It Does Not Plausibly Demonstrate Intentional Discrimination***

The Court should dismiss Count I because it does not plausibly demonstrate intentional discrimination.  "In order to establish a prima facie case of discrimination in violation of the ADA, the plaintiff must prove that (1) she has a disability; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability." <u>Morisky v. Broward</u>

Cnty., 80 F.3d 445, 447 (11th Cir. 1996).   Although Count I recites these elements, (Doc. 1 at 5, ¶¶ 34-36), "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

Count I provides only a conclusory allegation of discrimination: "The Defendant City of Hartford willfully discriminated against [Plaintiff] because of his disability by terminating his employment."   (Doc. 1 at 5, ¶ 36.)   A conclusory allegation of discrimination is insufficient to survive a motion to dismiss.   See Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010) ("A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations."). In Harris v. Board of Trustees University of Alabama, the district court dismissed the complaint, in part, because the plaintiff pled "*no* specific facts to support her conclusory allegations of intentional discrimination."   846 F. Supp. 2d 1223, 1243 (N.D. Ala. 2012) (Hopkins, J.).   The district court held it was "not obligated to accept Plaintiff's conclusory legal assertions as true for the purposes of a motion to dismiss."   Id.   According to the Eleventh Circuit, "wholly conclusory, generalized, and non-specific claims of disparate treatment . . . are simply

12

insufficient to survive [a] motion to dismiss." <u>Jackson v. BellSouth Telecomm.</u>, 372 F.3d 1250, 1274 (11th Cir. 2004).

In this case, the Complaint's factual allegations actually demonstrate the absence of discrimination.  The Complaint alleges Plaintiff was diagnosed with diabetes in 1985.  (Doc. 1 at 2, ¶6).  Yet the City hired him in 2009, (Doc. 1 at 2, ¶ 5), and continued to employ him for six years, (Doc. 1 at 2, ¶ 7.)  Plaintiff's charge of discrimination states Hartford Fire Chief Andy Hovey informed Plaintiff that he "was terminated because on January 26, 2015, as the senior attendant on a call to the Police Department, [he] failed to take control."  (Ex. A.)  Despite his admitted awareness of the specific incident that led to his determination, Plaintiff does not supply any factual allegations which plausibly demonstrate that the stated reason for his termination was a pretext for unlawful discrimination.   Because Plaintiff does not plausibly demonstrate intentional discrimination, Count I does not state a claim upon which relief can be granted.

**C.    *The Court Should Dismiss Count II Because Plaintiff Did not Exhaust His Administrative Remedies***

The Court should dismiss Count II because Plaintiff did not exhaust his administrative remedies before the Equal Employment Opportunity Commission.  Plaintiff brings this action pursuant to Title I of the ADA.  (Doc. 1 at 1, ¶ 1.)  The ADA provides that "[t]he powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides . . . to any person alleging discrimination on the basis of disability in violation of any

13

provision of this chapter."  42 U.S.C. § 12117 (Westlaw 2015).  Accordingly, the enforcement provisions of  42 U.S.C. § 2000e-5 also govern ADA claims.

"Before filing suit under the Americans With Disabilities Act, 42 U.S.C.A. §§ 12101 *et seq.* (hereinafter "ADA"), a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC."  Sessom v. Wellstar Hosp., No. 1:08-CV-2057-TWT, 2009 WL 1562876, at *2 (N.D. Ga. May 29, 2009) (Thrash, J.).  "For Alabama employees, this charge must be filed within 180 days of the alleged unlawful employment activity."  Swindle v. Jefferson Cnty. Comm'n, 593 F. App'x 919, 925 (11th Cir. 2014).  "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'"  Gregory v. Georgia Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting Evans v. U.S. Pipe and Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)).

"An employee who has exhausted her administrative remedies may pursue a civil action within 90 days of receiving a right-to-sue letter from the EEOC."  Swindle v. Jefferson Cnty. Comm'n, 593 F. App'x 919, 925 (11th Cir. 2014).  "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n.8 (11th Cir. 1994).  "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate."  Gregory v. Georgia Dep't of Human Res.,

14

355 F.3d 1277, 1279-80 (11th Cir. 2004) (quoting <u>Wu v. Thomas</u>, 863 F.2d 1543, 1548 (11th Cir. 1989)).  "The proper inquiry is whether the complaint is like or related to, or grew out of, the allegations contained in the relevant charge." <u>Kelly v. Dun & Bradstreet, Inc.</u>, 557 F. App'x 896, 899 (11th Cir. 2014).

Count II's allegations of failure to accommodate and retaliation are unlike, unrelated to, and did not grow out of Plaintiff's allegation of discriminatory termination. (Ex. A.)  Plaintiff's charge states, "I believe I was terminated because of my disability." (Ex. A.)  Plaintiff only marked the box labeled "DISABILITY." (Ex. A.)  Plaintiff left the box labeled "RETALIATION" blank. (Ex. A.)  Plaintiff did not make any allegation of retaliation or denial of a request for an accommodation in his charge of discrimination. (Ex. A.)

The claims that allege failure to provide a reasonable accommodation and retaliation in Count II are barred because Plaintiff failed to exhaust.  In <u>Ramon v. AT&T Broadband</u>, the United States Court of Appeals for the Eleventh Circuit affirmed the district court's determination that the plaintiff's hostile work environment and retaliation claims were barred because she did not exhaust those claims with the EEOC:

> Ramon has pointed to no allegation in her EEOC charge that reasonably points to the kind of pervasive and oppressive conditions that would allow us to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment.  Likewise, Ramon did not check the retaliation box on the EEOC charge form and failed to illustrate in the charge her claim later made in the complaint that the relocation from the provisioning department to the BSAC was a result of her complaints and STD leave seeking.  Because neither a retaliation nor a hostile work environment claim could have reasonably been

15

> expected to grow [out] of the allegations made by Ramon in her
> EEOC charge, the district court did not err by finding that she
> failed to exhaust those claims.

195 F. App'x 860, 866 (11th Cir. 2006).

In <u>Williams v. Revco Discount Drug Centers, Inc.</u>, the United States Court of Appeals for the Eleventh Circuit recognized a distinction between a claim of discrimination and a claim of retaliation: "the district court correctly determined that Williams's ADA retaliation claim was unexhausted because Williams failed to include this claim in his EEOC charge. Thus, the only issue before us is Williams's discrimination claim under the ADA." 552 F. App'x 919, 921 (11th Cir. 2014).

Count II's allegation of a failure to accommodate fares no better. "[A]n employer's failure to accommodate is a separate act of discrimination under the ADA that gives rise to a separate cause of action under the ADA, with a different burden of proof and different theory of liability." <u>Nelson v. PMTD Restaurants, LLC</u>, No. 3:12-cv-00369-MEF, 2013 WL 4045086, at *8 (M.D. Ala. Aug. 8, 2013) (Fuller, J.). In <u>Nelson v. PMTD Restaurants, LLC</u>, the United States District Court for the Middle District of Alabama held a plaintiff failed to exhaust her claim for failure to accommodate under the ADA when she did not mention that claim in her EEOC charge:

> Nelson does not mention anywhere in her EEOC charge that PMTD
> failed to provide her a reasonable accommodation so she could
> perform the essential functions of her job.  Her charge is limited to
> allegations about Teal's hostile treatment of her and Teal's refusal
> to let her work at the cash register because he thought she was
> physically unable to do so.  Because Nelson did not allege that
> PMTD failed to accommodate her disability in her EEOC charge,
> and thus, failed to exhaust her administrative remedies as to that

16

claim, PMTD's motion for summary judgment on that claim is
GRANTED.

No. 3:12-cv-00369-MEF, 2013 WL 4045086, at *8 (M.D. Ala. Aug. 8, 2013)

(Fuller, J.).

     In <u>Thompson v. City of Seminole City Council</u>, the United States District

Court for the Middle District of Florida reached the same conclusion:

> The Court concludes that summary judgment is appropriate on
> Thompson's failure to accommodate claim for the additional reason
> that Thompson failed to exhaust his administrative remedies for
> this claim before filing suit.  The allegations in Thompson's EEOC
> charge were limited to improper termination based on disability
> and age.  Thompson did not make any reference to the fact that
> the City required him to serve as Acting Lieutenant, nor did he
> allege that the City failed to accommodate him.  An ADA claim
> based on termination involves a theory of liability and elements of
> proof that are separate and distinct from an ADA failure to
> accommodate claim.  Therefore, his failure to accommodate claim
> exceeded the scope of his EEOC charge.

No. 8:05-CV-1316-T-24TGW, 2007 WL 2827579, at *8 n.9 (M.D. Fla. Sept. 26,

2007) (Bucklew, J.).

     Because Plaintiff's charge of discrimination did not complain about

retaliation or a failure to accommodate, Count II must be dismissed on the

ground that Plaintiff failed to exhaust his administrative remedies with the

EEOC.

**D.  *A State Law Claim for Intentional Infliction of Emotional Distress Is Barred by Municipal Immunity Under Alabama Code § 11-47-190***

     A state law claim for intentional infliction of emotional distress is barred

by municipal immunity under Alabama Code § 11-47-190.  In paragraph 1, of

page 1, the Complaint declares its intention to assert "the state action of

intentional infliction of emotional distress."  (Doc. 1 at 1, ¶ 1.)  The Alabama

Court of Civil Appeals has explained the tort of intentional infliction of emotional distress as follows:

> The four elements of the tort of intentional infliction of emotional distress, which is also known as the tort of outrage, are: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) . . . the distress was severe.

Chaney v. Ala West-AL, L.L.C., 22 So. 3d 488, 498 (Ala. Civ. App. 2008).

As a general rule, a municipality has statutory immunity from all tort claims, except those that allege harm suffered through the neglect, carelessness, or unskillfulness of a municipal employee:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the *neglect, carelessness or unskillfulness* of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty… .

Ala. Code § 11-47-190 (1975) (emphasis added).

Under § 11-47-190, municipalities are immune from claims that allege the intentional infliction of emotional distress.   "This statute limits a municipality's liability for the acts of its agent to those acts that are negligent, careless, or unskillful."   Ex parte City of Tuskegee, 932 So. 2d 895, 910 (Ala. 2005).   "Intentional infliction of emotional distress, as the name indicates, involves intentional conduct, and thus the city may not be held liable."   Hardy v. Town of Hayneville, 50 F. Supp.2d 1176, 1191 (M.D. Ala. 1999) (Albritton, J.).

In Walker v. City of Huntsville, the Alabama Supreme Court held a municipality has immunity against a claim for intentional infliction of emotional distress under § 11-47-190:   "The tort of outrage is . . . an intentional tort.  Because the City, under § 11–47–190, may be liable only for acts of neglect, carelessness or unskillfulness, the trial court correctly entered a summary judgment for the City on Walker's tort-of-outrage claim."[3]  62 So. 3d 474, 502 (Ala. 2010).

In any event, Alabama courts have strictly limited the tort of intentional infliction of emotional distress:

> The Alabama Supreme Court has indicated that there are three limited circumstances under which a claim of outrageous conduct can go to the jury: cases having to do with wrongful conduct in the context of family burials; cases where insurance agents employed heavy-handed, barbaric means to coerce a settlement; and cases involving egregious sexual harassment.

Carter v. Harris, 64 F. Supp. 2d 1182, 1994 (M.D. Ala. 1999) (Albritton, C.J.) (citing Thomas v. BSE Indus. Contractors, Inc., 624 So. 2d 1041, 1044 (Ala. 1993)).  The Complaint does not plead any factual allegations that plausibly demonstrate a claim of intentional infliction of emotional distress, even in the absence of immunity.  For all of these reasons, the Court should dismiss any state law claim for intentional infliction of emotional distress.

## E.    Damages

The Complaint asserts claims for compensatory and punitive damages that are not actionable.

---

[3] "The intentional infliction of emotional distress is also known as the tort of outrage."  Ex parte Bole, 103 So. 3d 40, 52 (Ala. 2012).

### *1.    Punitive Damages*

The Court should dismiss the claim for punitive damages, (Doc. 1 at 7, ¶ 57), because punitive damages may not be recovered from a municipality under federal or state law.  The Americans with Disabilities Act incorporates the same remedies that are available under Title VII of the Civil Rights Act of 1964.  See 42 U.S.C.A. § 12117 (Westlaw 2015) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides . . . any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.").  Punitive damages are not recoverable from a municipality under the ADA.  See Dertz v. City of Chicago, No. 94 C 542, 1997 WL 85169, at *20 (N.D. Ill. Feb. 24, 1997) (Manning, J.) ("Although Title I of the ADA provides for punitive damages, it explicitly exempts governmental bodies such as municipalities.").

The recovery of damages under the ADA is governed by 42 U.S.C. § 1981a:

> In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e-5 or 2000e-16] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 794a(a)(1) of Title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of Title 29 and the regulations implementing section 791 of Title 29, or who violated the requirements of section 791 of Title 29 or the regulations implementing section 791 of Title 29 concerning the provision of a reasonable accommodation, or section 102 of the

Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

42 U.S.C.A. § 1981a(a)(2) (Westlaw 2015).

Section 1981a(b)(1) governs the availability of punitive damages, and it specifically exempts governments and their political subdivisions from punitive damages awards:

A complaining party may recover punitive damages under this section against a respondent *(other than a government, government agency or political subdivision)* if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C.A. § 1981a(b)(1) (Westlaw 2015) (emphasis added).

Plaintiff also cannot recover punitive damages from the City under state law. Even if Plaintiff could state a viable claim against the City for intentional infliction of emotional distress, the City still has immunity against punitive damages awards. See Ala. Code § 6-11-26 (1975) ("Punitive damages may not be awarded against the State of Alabama or any . . . municipality thereof . . . ."). Based on the foregoing, all punitive damages claims should be dismissed for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

### 2.   *Compensatory Damages*

The Court should also dismiss the Complaint's requests for:

a) "double back pay, including fringe benefits," (Doc. 1 at 7, ¶ 51);

21

b) "front pay . . . until [Plaintiff's] planned retirement age of 70, (Doc. 1 at 7, ¶ 52);

c) "liquidated damages," (Doc. 1 at 7, ¶ 53);

d) "three times the economic damages for the emotional distress [Plaintiff allegedly] suffered," (Doc. 1 at 7, ¶ 54);

e) "compensatory damages to [Plaintiff's] family members for loss of consortium with him," (Doc. 1 at 7, ¶ 55); and

f) "the medical costs incurred for lack of insurance and life insurance," (Doc. 1 at 7, ¶ 56).

Those requests are not authorized by the remedial provisions of the ADA. See 42 U.S.C. § 1981a(a)(2) (Westlaw 2015).

Section 1981a(a)(2) provides that in the case of a violation, "the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent."  42 U.S.C.A. § 1981a(a)(2) (Westlaw 2015).  Subsection (b) states:

(b) Compensatory and punitive damages

(1) Determination of punitive damages

A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

(2) Exclusions from compensatory damages

Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e-5(g)].

22

(3) Limitations

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party –

> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and

> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and

> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

(4) Construction

Nothing in this section shall be construed to limit the scope of, or the relief available under, section 1981 of this title.

42 U.S.C.A. § 1981a(b) (Westlaw 2015).

Section 706(g) states:

(g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders

> (1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as

23

may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.  Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission.  Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

(2)(A) No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e-3(a) of this title.

(B) On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--

> (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C.A. § 2000e-5(g) (Westlaw 2015).

Neither statute authorizes the recovery of damages for double back pay, front pay until retirement age, liquidated damages, treble economic damages, loss of consortium by family members, or medical and life insurance costs.

The Court should dismiss the claims for damages in paragraphs 51-57 for failure to state a claim upon which relief can be granted.  <u>See</u> Fed R. Civ. P. 12(b)(6).

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, the City of Hartford moves to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.

**s/ James H. Pike**
James H. Pike  (ASB-5168-P63J)
Attorney for Defendant
The City of Hartford

OF COUNSEL:

SHEALY, CRUM & PIKE, P.C.
P.O. Box 6346
Dothan, Alabama  36302-6346
Tel. (334) 677-3000
Fax (334) 677-0030
Email: jpike@scplaw.us

## <u>CERTIFICATE OF SERVICE</u>

I, James H. Pike, certify that on November 3, 2015, I electronically served this document, via the CM/ECF system, upon:

Letta Dillard Gorman
P.O. Box 983
Geneva, Alabama  36340

**s/ James H. Pike**
James H. Pike

25