IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| TIM ANDREWS, ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 1:15-CV-00684-WKW |
| CITY OF HARTFORD, ) | |
| Defendant. ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

COMES NOW, Timothy Andrews, by and through his attorney of record, Letta Dillard Gorman, and objects to the Defendant's Motion to Dismiss for Failure to State a Claim and provides the following in support thereof:

### I. INTRODUCTION/RELEVANT FACTUAL BACKGROUND

Plaintiff Tim Andrews worked as a Paramedic for the City of Hartford (Doc. 1, page 2, paragraph 5), and was admittedly diagnosed with diabetes thirty years ago (Doc. 1, page 2, paragraph 4, 6). He is an insulin-pump dependent diabetic (Doc. 1, page 2, paragraph 8) and was terminated from his position with the City of Hartford in February 2015 (Doc. 1, page 2, paragraph 7). Approximately one month prior to his termination he reported another incident of discriminatory harassment and treatment by his co-workers to the Chief, Andy Hovey, and requested that he take corrective action to stop such harassment and require the co-workers to be more sensitive to his disabling condition (Doc. 1, page 2, paragraph 9 and Doc. 1, page 4, paragraph 30). The harassment included comments made related to his diabetes, his need for using the insulin pump; his food requirements, and photographing, touching, moving, and removing some of Mr. Andrews' personal belongings including his needed diabetic foods. The City of Hartford filed a Motion to Dismiss Mr. Andrews' Complaint based on failure to state a claim of discrimination and retaliation and he responds herein (Doc. 11).

1

## II. LEGAL STANDARD

In reviewing the sufficiency of a complaint, all well-pleaded facts must be accepted as true and all reasonable inferences must be drawn in favor of the plaintiff. Fed. R. Civ. P. 12(b)(6); *Speaker v. U.S. Dep't of Health and Hum. Svcs. Ctrs. for Disease Cntrl. & Prev.*, 623 F.3d 1371, 1380 (11th Cir. 2010). The Federal Rules of Civil Procedure require only that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Furthermore, the Supreme Court has described this notice pleading standard as requiring a complaint to "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Mr. Andrews submits that he properly filed a complaint with the EEOC for violation of the ADA within the statutory time allowed. Under some circumstances, an intake questionnaire may constitute a charge of discrimination with the EEOC if it contains, as required by EEOC regulations, —an allegation and the name of the charged party and can be —reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee.‖ *Fed. Expr. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). In addition, details of Mr. Andrews' charges were provided to the City Council and to the Alabama Unemployment Compensation hearing officer.

Title I of the Americans with Disabilities Act of 1990 prohibits private employers, State and local governments, employment agencies and labor unions from discriminating against qualified individuals with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment. The

ADA covers employers with 15 or more employees, including State and local governments. It also applies to employment agencies and to labor organizations. The ADA applies to recruitment, advertising, tenure, layoff, leave, fringe benefits, and all other employment-related activities. The first part of the definition makes clear that the ADA applies to persons who have impairments and that these must substantially limit major life activities such as seeing, hearing, speaking, walking, breathing, performing manual tasks, learning, caring for oneself, and working.

The second part of the definition protecting individuals with a record of a disability would cover, for example, a person who has recovered from cancer or mental illness.

The third part of the definition protects individuals who are regarded as having a substantially limiting impairment, even though they may not have such an impairment. For example, this provision would protect a qualified individual with a severe facial disfigurement from being denied employment because an employer feared the "negative reactions" of customers or co-workers.

A reasonable accommodation is any modification or adjustment to a job or the work environment that will enable a qualified applicant or employee with a disability to participate in the application process or to perform essential job functions. 42 U.S.C. §(b)(5)(A). Reasonable accommodation also includes adjustments to assure that a qualified individual with a disability has rights and privileges in employment equal to those of employees without disabilities. Mr. Andrews' use of an insulin pump is a reasonable accommodation.

Following his termination, Mr. Andrews also filed for unemployment compensation and was granted such compensation based on the facts of his discriminatory treatment and pretextual

termination (Exhibit 1). The City of Hartford appealed the decision of the UC Hearing Officer, but the appeal was denied.

## III. ARGUMENT

Mr. Andrews sufficiently plead the facts supporting his claims and the grounds upon which they are based. He complained that he was harassed by his co-workers about his diabetes and dependence on the insulin pump, that he reported the harassment to the Chief, that no sensitivity training to eliminate the harassment was conducted, no corrective action was taken and the treatment continued, and that he was terminated shortly after another report to the Chief on a pretext of his not performing his job (Doc. 1, page 2 and 4).

Title I of the ADA requires that covered employers provide reasonable accommodations, 28 C.F.R. § 36.303(c); *see also* 42 U.S.C. § 12182(b)(2)(A)(iii). Mr. Andrews' complaint alleges a valid claim of discrimination under Title I of the ADA—specifically, the City of Hartford discriminated on the basis of disability when it failed to provide sensitivity training and corrective action to prevent a hostile work environment for Mr. Andrews. He complained to the Chief about several of his co-workers and supervisors who were fully aware that he was insulin-dependent. He complained that he was being harassed for such as well as his supervision of others was being ignored- and he was subsequently terminated for his reporting such. Mr. Andrews' factual allegations—that he was denied his requested reasonable accommodations of sensitivity training and corrective action to stop workplace harassment of his disabling condition and that he was retaliated against for making such a request under the pretext of failing to take control of a work situation- all fall squarely within Title I's statutory and regulatory protections.

Disability harassment under Title I of the ADA is a developing area of law, and this cause of action is being explicitly or implicitly recognized by a growing number of courts. The

4

U.S. Supreme Court and the lower federal courts have previously recognized a cause of action for workplace harassment under Title VII of the Civil Rights Act of 1964 (Title VII), which prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2(a)(1). A review of Title VII harassment cases reveals that there is no exact science to determining what conduct rises to the level of actionable harassment. Courts that have recognized a disability harassment claim under Title I of the ADA have analogized such a claim to a Title VII harassment claim.

Title I of the ADA prohibits discrimination in employment, and provides employees with disabilities with broad protections in the workplace. The statute states: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.§12112 (a)

Courts that have recognized a cause of action for disability harassment have focused on the similarities between this provision of the ADA and Title VII. Although harassment is not expressly prohibited in Title VII, the U.S. Supreme Court has recognized that harassment based on a protected status is implicitly prohibited by Title VII. Both Title I of the ADA and Title VII use the language **terms, conditions, and privileges of employment**." Courts have interpreted this to be the relevant portion of the statutes from which to draw a harassment claim. The courts have established that, should conduct rise to a level that is severe and pervasive, and creates an abusive work environment that interferes with an employee's ability to perform the job, it is a form of discrimination, because it adversely effects the "terms and conditions" of that individual's employment.

5

Several federal courts have either expressly recognized or presumed that the ADA also includes a cause of action for harassment based on disability since Congress was aware of the Supreme Court's interpretation of "terms, conditions, and privileges of employment" under Title VII when it enacted the ADA. Four federal circuit courts of appeal have ruled that disability harassment/hostile work environment claims are actionable under Title I of the ADA. Many other circuits have presumed that the cause of action exists, but have not yet explicitly issued a ruling that a disability harassment claim is actionable under the ADA. Further, numerous federal trial courts have either recognized the claim or presumed that the claim exists. Significantly, no federal court has ruled that a disability harassment claim is not actionable under Title I of the ADA.

Courts recognizing a claim for disability harassment have adopted the Title VII analysis for harassment or hostile work environment claims, slightly modified to reflect that the claimed harassment is based on disability. Courts have held that, to establish a hostile work environment claim under the ADA, a plaintiff must prove that:

1. **Plaintiff is a qualified individual with a disability;**
2. **Plaintiff was subjected to unwelcome harassment;**
3. **The harassment was based on plaintiff's disability;**
4. **The harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and**
5. **Some factual basis exists to impute liability for the harassment to the employer (i.e. the employer knew or should have known of the harassment and failed to take prompt, remedial action)**

6

It should be noted that Section 504 of the Rehabilitation Act of 1973 (Rehab Act), which prohibits discrimination by entities that receive federal funding, applies in the employment context. Because the ADA incorporates by reference many of the terms of the Rehab Act, courts have held that the standard for proving a disability harassment claim under the Rehab Act is parallel to that established under Title I of the ADA. The only additional element a plaintiff must show is that the employer is a recipient of federal funds, which the City of Hartford does through the Alabama Department of Economic and Community Affairs.

In 2001, two cases were decided within a couple of weeks of each other that were the first two circuit courts of appeal to recognize a cause of action of disability harassment. These two cases, which ended up providing very different results to the plaintiffs, have formed the basis for the development of disability harassment case law under the ADA.

In **Fox v. General Motors Corp., 247 F.3d 169 (4th Cir. 2001),** the plaintiff, Robert Fox, worked for General Motors in different jobs for many years. He sustained back injuries and, upon his return to work, had light-duty work restrictions. Although Fox was assigned to a light duty table, his foreman asked him to perform tasks that he was unable to do because of his injury. When Fox refused to perform the tasks, his foreman verbally abused Fox, often using profanity, and some other officials at work also made fun of Fox and other workers with disabilities, calling them "hospital people," "handicapped motherf***ers," and "911 hospital people." The foreman instructed other employees not to speak to those with disabilities, encouraging them to ostracize workers with disabilities and not to bring supplies to the light-duty table. The foreman eventually made Fox work in a hazardous area at a table that was too low, which re-aggravated Fox's back injury. The foreman also refused to allow Fox to take the

7

physical required to apply for a truck driver position, which met Fox's medical restrictions and for which he was otherwise qualified.

Fox testified that the harassment he endured caused him both physical and emotional injuries. His psychiatrist ordered that Fox take a leave for a few weeks because of the harassment. His physician concluded that, although Fox was physically capable of performing light-duty work, the constant harassment caused him to be depressed and anxious, which in turn led to a worsening of Fox's physical condition, and ultimately meant that Fox could no longer work at the plant. Fox filed a lawsuit alleging that GM discriminated against him and subjected him to a hostile work environment in violation of the ADA.

A jury in the federal district court awarded Fox $200,000 in compensatory damages, $3,000 for medical expenses, and $4,000 for lost overtime. The Fourth Circuit Court of Appeals affirmed the jury's verdict for Fox (except for the $4000 dollars in overtime pay).

In its decision, the Fourth Circuit first addressed whether a claim for disability harassment was cognizable under the ADA. Because the ADA uses similar language to Title VII and the Supreme Court had previously recognized harassment claims under Title VII, the court concluded that a claim for disability harassment was cognizable under the ADA. The court also noted that the two statutes have the same purpose, the prohibition of illegal discrimination in employment, and that the EEOC regulations implementing the ADA mentioned harassment. (29 C.F.R. §1630.12(b) states "[i]t is unlawful to coerce, intimidate, threaten, *harass* or interfere with any individual in the exercise or enjoyment of any right granted or protected by" the employment provisions of the ADA.)*(emphasis added)*.

8

After the court recognized that a cause of action existed, the court adopted the five-element test discussed above. The court reasoned that, to recover on a hostile work environment claim, the plaintiff must demonstrate not only that the plaintiff subjectively perceived the workplace as hostile, but also that a reasonable person would perceive the workplace as hostile. The court explained that the factors to consider when determining the objectively hostile component of the claim include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." The harassment and disregard of Mr. Andrews' instructions by his co-workers absolutely interfered with his job performance and resulted in his wrongful termination.

The court then applied this test to the evidence presented at trial and held that the harassment was severe and pervasive. Although not necessary to the success of his claim, the court also found that Fox had suffered both physical and emotional injury. Medical witness testimony showed that the worsening of Fox's back injury, which led to increased pain and suffering, may have been triggered solely by the harassment Fox experienced at work.

The nature and type of harm or injury a plaintiff presents and the amount plaintiff is able to prove is attributable to disability-based harassment will directly affect the amount of damages plaintiff may receive.

In *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229 (5th Cir. 2001), plaintiff Sandra Flowers worked for Southern Regional Physician Services, Inc. for over two years (and its predecessor company for four years prior to that) as a medical assistant to a physician. Although Flowers had previously been good friends with her supervisor, almost immediately after the supervisor discovered that Flowers was HIV-positive, the supervisor

9

stopped socializing with Flowers and refused to even shake her hand. The supervisor also began intercepting Flowers' telephone calls, eavesdropping on her conversations, and hovering around her desk.

Although the employer had previously required Flowers to submit to only one random drug test, after the supervisor discovered Flowers' HIV status, Flowers underwent four random drug tests within a one-week period. Additionally, before Flowers' HIV status was known, she received good performance evaluations and a ten percent raise. Within a month after informing her employer of her HIV status, Flowers was written up, and one month later, the supervisor wrote-up Flowers again and placed her on a ninety-day probation. Just days before the ninety-day probation ended, Flowers was again written up and put on another ninety-day probation. This time, the president of Southern Regional was present at the meeting. Flowers testified that the president called her a "bitch" and said that he was "tired of her crap." Ultimately, Southern Regional discharged Flowers.

The jury found that Flowers was subjected to unwelcome harassment based on her HIV-positive status and that the harassment was so severe and pervasive that it unreasonably interfered with her job performance.

Like the Fourth Circuit, the Fifth Circuit held that, because Title VII covers hostile work environment claims, claims for disability harassment are actionable under the ADA. The court adopted the same five-element test discussed above. Under this test, the court concluded that the jury could have reasonably found that the supervisor's and the president's conduct was sufficiently severe or pervasive to create a hostile work environment and unreasonably interfered with Flowers' work performance. Furthermore, Southern Regional did not contest that it was

aware of the harassment, and the evidence showed that Southern Regional failed to take prompt action to remedy the harassment.

The court found that Flowers' claims of emotional harm were based on emotional and physical symptoms that she experienced *after* her termination from employment. Flowers presented evidence that after her discharge from Southern Regional she started losing weight, had diarrhea and nausea, had trouble sleeping, and became ill. However, because she did not provide sufficient evidence that she was experiencing distress or other injury during the months she was being harassed on the job, the court found she was only entitled to nominal damages. The court explained that to recover more than nominal damages for emotional harm, a plaintiff must prove "actual injury" resulting from the harassment, and the court would not presume emotional harm just because discrimination occurred. Therefore, the court vacated the jury's award of damages.

In *EEOC v. BobRich Enterprises,* **No. 3:05-CV-01928-M (N.D. Tex. Jul. 27, 2007),** a jury awarded $165,000 to a Subway manager who is hard of hearing finding that she had been harassed and forced to resign because of her disability. The jury verdict followed the presentation of evidence by the EEOC that plaintiff was forced to resign her position after both the owner and human resources/training manager repeatedly mocked her privately and in front of other employees, creating a hostile workplace, with taunts such as: "Read My Lips" and "Can you hear me now?" and "You got your ears on?"

In *Navarre v. White Castle System, Inc.,* **2007 WL 1725382 (D. Minn. June 14, 2007),** the court denied summary judgment to an employer on an ADA harassment claim. The plaintiff, who had ADHD and Tourette's syndrome, was hired to work the night shift at White Castle. Plaintiff alleged his supervisor used derogatory language ("f***ing retard"), physically pushed

11