him down and threatened violence. Taking plaintiff's deposition testimony as true for summary judgment purposes, the court found that plaintiff had submitted sufficient evidence that he had experienced harassment related to his disability that was severe and pervasive, and that White Castle management had not effectively responded to his harassment complaints.

In *Spencer v. Wal-Mart Stores, Inc.,* **2005 WL 697988 (D. Del. Mar. 11, 2005),** the court affirmed the jury's award of $12,000 damages for emotional distress to a hard of hearing employee for claims of hostile work environment and failure to accommodate. The court found evidence that her supervisor and other employees yelled at her, refused to facilitate communications with her, and used obscene gestures directed towards her, and thus, supported the jury's determination of a hostile work environment.

In *EEOC v. Luby's, Inc.,* **2005 WL 3560616 (D. Ariz. Dec. 29, 2005),** a floor attendant with a mental impairment was allowed to move forward with her hostile work environment claim against the employer restaurant. The employee alleged she was subjected to repeated name-calling, barking, and threats of violence, which may establish a hostile working environment.

In *Arrieta-Colon v. Wal-Mart Stores,* **434 F.3d 75 (1st Cir. 2006),** the court upheld a $230,000 jury verdict in a case where the employer did not take action against harassment employee with Peyronie's Disease experienced because of his penile implant. Employee was subjected to repeated teasing and harassment by co-workers and managers about his condition, including over the store's paging system. Co-workers testified that supervisors knew about the harassment and failed to prevent it. Employer cannot shield itself from liability by relying on a grievance policy that is not consistently used.

12

In *Quiles-Quiles v. Henderson*, 439 F.3d 1 (1st Cir. 2006), the court found that evidence was sufficient for the jury to find a hostile work environment where employee was subject to such constant ridicule about his depression that he was hospitalized and eventually withdrew from the workforce. The court rejected the argument that it was the sort of conduct common in "blue-collar" workplaces.

Under the ADA, it is unlawful for an employer to retaliate against an employee based upon the employee's efforts to exercise his or her civil rights. Specifically, in Title V, the ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. 12203(A) The rationale behind this anti-retaliation provision is to provide protection for employees who exercise their civil rights and to promote the full and fair enforcement of the ADA.

In order to prove a retaliation claim, plaintiffs must demonstrate a causal connection between their exercise of a protected activity (e.g. reporting to supervisor or filing an EEOC claim) and the employer's adverse action (e.g. termination). In many of these cases, the court will look at the "temporal proximity" of the two events to determine if there was a causal connection. In this instance only two weeks passed from Mr. Andrews' last report and his termination.

In *Garrett v. University of Alabama at Birmingham Board of Trustees*, 507 F.3d 1306 (11th Cir. 2007), the Eleventh Circuit upheld the dismissal of plaintiff's retaliation claim. Plaintiff had alleged that she was demoted after she requested leave under the ADA. The court held that plaintiff's retaliation claim ultimately failed because plaintiff did not show a causal

13

connection between her request for a leave of absence and her demotion. Plaintiff pointed to the temporal proximity between the two events, she requested leave before March of 1995 and was demoted in July. The court opined that there were more than four and one-half months in between these two dates, so these events were not temporally close.

In *Satchel v. School Bd. of Hillsborough County*, 2007 WL 3023948 (11th Cir. Oct. 16, 2007), the court granted the school board's motion for summary judgment after finding no evidence that her termination was in retaliation to her reasonable accommodation request. The court relied on the fact that the plaintiff requested a reasonable accommodation and was not terminated until two years later.

The courts are split over whether plaintiffs can recover damages in an ADA retaliation claim. In addition to limiting damages, plaintiffs may also be denied access to a jury trial if there are no claims in which damages can be awarded. The remedies under the ADA generally emanate from the Civil Rights Act of 1964 which provided that a court may order certain equitable relief including, but not limited to, back pay, but does not provide for compensatory or punitive damages.

However, Congress subsequently passed the Civil Rights Act of 1991, which expands the remedies under the Civil Rights Act of 1964 to include compensatory and punitive damages when the defendant has engaged in "unlawful intentional discrimination." Some courts have held that this provision is broad enough to encompass retaliation *[Kramer v. Banc of America Securities*, 355 F.3d 961 (7th Cir. 2004), *Johnson v. Bozarth Chevrolet*, 297 F. Supp. 2d 1286 (D. Colo. 2004), *Cantrell v. Nissan North America*, 2006 WL 724549 (M.D. Tenn. Mar. 21, 2006)]; whereas other courts have held that retaliation is outside of the scope of the Civil Rights Act of 1991, and therefore no compensatory or punitive damages are available. [See *Rumler v.*

14

*Dept. of Corrections,* 2008 WL 215699 (M.D. Fla. Jan. 28, 2008), *Edwards v. Brookhaven Science Associates, LLC,* 390 F.Supp. 2d 225 (E.D. N.Y. 2005), *Ostrach v. Regents of the Univ. of California,* 957 F. Supp. 196 (E.D. Cal. 1997)]

It is critical that employers enforce conduct rules and impose discipline in a consistent manner. If an employer imposes a greater degree of discipline against an employee with a disability than an employee without a disability, the employer may be subject to a disparate treatment claim based on disability. For example in *Moore v. County of Cook,* **191 F.3d 456 (7th Cir. 1999),** plaintiff was a data entry worker who had an amputated leg. She missed work related to her amputation and subsequently was terminated for failing to meet work production standards. However, a non-disabled employee who had similarly failed to meet work production standards was only given a three-day suspension. The Seventh Circuit held that there was sufficient evidence that the harsher discipline imposed on the plaintiff emanated from the fact that she had a disability.

Back pay is available under Title VII, the ADA, the ADEA, the EPA, the Rehabilitation Act, the USERRA, and Sections 1981 and 1983. Once the plaintiff establishes that unlawful discrimination caused her loss, she is entitled to back pay. See Albermarle Paper Co. v. Moody, 422 U.S. 405, 417-18 (1975) (holding that back pay should be denied only in unusual circumstances where the award would frustrate the statutory purpose of eradicating discrimination and making victims whole). Moreover, the Equal Employment Opportunity Commission ("EEOC") can seek recovery of back pay even when an employee has signed a mandatory arbitration agreement. EEOC v. Waffle House, Inc., 534 U.S. 279, 291, 296-97 (2002) (holding that EEOC can seek victim-specific relief without the alleged victim's consent although her acceptance of a monetary settlement will limit the EEOC's ability to recover back

15

pay).

The ADA allows compensatory and punitive damages except in reasonable accommodations cases where the employer has made a good faith, although ultimately unsuccessful, effort to reasonably accommodate the employee with disabilities in consultation with the employee seeking the accommodation. 42 U.S.C. § 12117(a); 42 U.S.C. § 1981a(a)(3). Also, some courts held that compensatory and punitive damages are unavailable for a retaliation claim brought under the ADA. Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1265 (9th Cir. 2009); Kramer v. Banc of Am. Sec., L.L.C., 355 F.3d 961, 965 (7th Cir. 2004); Bowles v. Carolina Cargo, Inc., 100 F. App'x 889, 890 (4th Cir. 2004).

In order to recover compensatory damages, the plaintiff must submit proof of actual non-economic injuries, such as emotional distress, pain and suffering, or harm to reputation, caused by the employer's unlawful conduct. Carey, 435 U.S. at 264; see Patterson, 90 F.3d at 936 (concluding that Title VII's standard of proof to establish compensatory damages is comparable to the Section 1981 and 1983 standard to demonstrate emotional distress); see, e.g., Williams v. Pharmacia, Inc., 137 F.3d 944, 953-54 (7th Cir. 1998) (affirming award of $ 250,000 compensatory damages in lost future earnings and diminished professional standing as a result of termination).

Punitive damages are available for disparate treatment cases under Title VII, the ADA, and Sections 1981 and 1983 when the employer is found to discriminate the plaintiff "with malice or with reckless indifference." 42 U.S.C. § 1981a(b); Smith, 461 U.S. at 56. On the other hand, punitive damages are unavailable under the Rehabilitation Act, and in some circuits, in pattern or practice cases under Title VII. See Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415, 417 (5th Cir. 1998) (compensatory and punitive damages

16

involve unique individual issues and thus ability to recover such damages requires proof of individual injury).

To recover punitive damages, the plaintiff must successfully impute liability to the employer for the alleged unlawful discrimination. Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 539-46 (1999). Also, the plaintiff need to show that the defendant engaged in discriminatory conduct with the knowledge that it might be in violation of federal antidiscrimination law; the plaintiff need not show that the employer engaged in egregious or outrageous acts. Kolstad, 527 U.S. at 536-40. The plaintiff does not need to demonstrate the defendant's actual knowledge that the defendant's action would violate federal antidiscrimination.

Mr. Andrews submits that his Complaint is solidly based on the facts of the City of Hartford's discriminatory treatment of the harassment he endured from his co-workers without intervention or accommodation despite his notice, the continued harassment after his reporting, the permitted and condoned insubordination of his co-workers, and his eventual pretextual termination caused by his reporting.

In arguing that Mr. Andrews fails to state a claim for relief under the ADA, the City of Hartford relies heavily on the allegation that he does not meet the definition under ADA Standards.

1. **Mr. Andrews is a qualified individual with a disability.** Mr. Andrews is admittedly an <u>insulin-dependent diabetic</u> who has relies on an insulin pump. His disability is a well-known fact by all of his co-workers and supervisors at the City of Hartford and has also been observed in the Rescue House first-hand when he is undressed, tends to his pump, and brings and stores special diet foods in the community refrigerator. The Diabetes

17

substantially affects more than one of his life activities, to wit walking, talking, breathing, eating, sleeping, thinking, learning, and he is a qualified individual with a disability under the definition in ADA. He relies on insulin, diet, exercise, and sleep to stay alive. This condition is lifelong. In addition, Mr. Andrews is an employee within the meaning of 42 U.S.C. 126 (Subchapter 1)(Section 12111)(4) and a qualified individual within the meaning of 42 U.S.C. 126 (Subchapter 1)(Section 12111)(8).

2. **Mr. Andrews was subjected to unwelcome harassment.** His co-workers, specifically Turner Shelley, and others called him names such as Wilfred Brimley (TV spokesperson for diabetic supplies), tampered with his personal items and food, ignored his instructions, laughed at him, made gestures, and wrote offensive messages to him. Mr. Andrews did not welcome such conduct or remarks and complained about them up to and including in January 2015 to his Chief, Andy Hovey. The harassment began in the summer of 2014 and continued until January 2015. Hunter Parrish stole the keys to his personal vehicle and would not return them. In October 2014 Chief Hovey made gestures at him while yelling and using profanity. Mr. Andrews made requests to NOT be scheduled with the co-workers who harassed him and defied his authority, including Turner Shelley. Mr. Shelley slandered Mr. Andrews in a memo dated January 12, 2015 and Mr. Andrews notified Chief Hovey of that incident. The call on which he was terminated was on January 26, 2015- 2 weeks later and Turner Shelley was his partner on that run and refused to obey his instructions for which Mr. Andrews was subsequently terminated!

3. **The harassment was based on Mr. Andrews' disability.** Mr. Andrews relies on the insulin pump as a reasonable accommodation in order to perform the essential functions

18

of his job. Without the pump, he would die. The harassing remarks made specifically referred to Mr. Andrews as Mr. Brimley who is a television spokesperson for Diabetic supplies. The food tampering was aimed at withholding needed nutrition compliant with a diabetic diet, and the messages were meant to ridicule Mr. Andrews for his disability.

4. **The harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment.** Mr. Andrews had difficulty getting his workers to comply with his instructions which ultimately was used against him as a pretext for his termination. The very co-worker about whom he complained, Turner Shelley, was his partner on the day he was alleged to have not taken control.

5. **Some factual basis exists to impute liability for the harassment to the employer (i.e. the employer knew or should have known of the harassment and failed to take prompt, remedial action).** Mr. Andrews followed the proper grievance and notice procedure in reporting the harassment and insubordination to his supervisor, Chief Andy Hovey, but the City of Hartford, a covered entity, failed to stop the harassment. As a direct cause of his complaining, he was terminated within a month for "failure to control" the actions of his worker on the rescue truck on February 2015- the same worker about whom he had complained as harassing him and not following his instructions. This discriminatory behavior was reported at several levels BEFORE this instant action was taken. That included reporting to the Chief, the Mayor, the City Council, and EEOC.

A. **The Requirement to Provide Reasonable Accommodations Under Title I Obligates The City of Hartford Generally To Provide Sensitivity Training and to Prevent Harassment**

19

Mr. Andrews' allegation is that the City of Hartford violated the ADA when it denied him reasonable accommodations including sensitivity training and the prevention of a harassing workplace based on his disability. Under Title I, the City of Hartford may not discriminate against any employee "on the basis of disability--- accommodations." 42 U.S.C. § 12182(a). In addition to this general nondiscrimination mandate, Title I prohibits covered employees from engaging in specific types of discrimination, including the failure to take such steps as may be necessary to ensure that no individual with a disability is harassed based on their disability or treated differently unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, services, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii).

### B. The City of Hartford retaliated against Mr. Andrews for his reporting the Discrimination

There is a direct causal relationship, both substantively and temporally, that Mr. Andrews was terminated because he complained about the continuing harassment he was enduring in the workplace and wanted corrective action. The ADA does not specifically require the qualified person with a disability to cite the varied items of discriminatory actions when filing a complaint for discrimination under ADA, including retaliation. When Mr. Andrews gave notice to his supervisor of the harassing actions of his co-workers and no corrective action was taken and he was terminated shortly thereafter, he properly exhausted the grievance procedure through the Chief, the Mayor, and the City Council before he filed a complaint to the EEOC (Exhibit 2). That general complaint satisfies the regulatory requirement for an administrative remedy and he has the right to pursue relief through the federal courts. Prior to his filing the Complaint with the EEOC, the details of the discrimination were provided to the City of Hartford through a meeting

20

with the Mayor, the Chief, and the City's counsel. They were also provided through the hearing with the Unemployment Compensation Division. Further in Smith-Mcillwaine v. Philadelphia Housing Development Corp., 2013 U.S. Dist. LEXIS 115072 (E. D. Pa. August 14, 2013), the Court found that the scope of the original charge should be liberally construed and that plaintiff's claims pertaining to the assignment of overtime and work duties before 2008 may "reasonably be expected to grow out of the charge of discrimination." Mr. Andrews' charge of retaliation grows out of his original charge of discrimination.

### IV. CONCLUSION

For the foregoing reasons, Mr. Andrews respectfully requests that the Court find that Mr. Andrews has alleged a valid claim of discrimination under Title I of the ADA.

Respectfully submitted on this the 4th day of December 2015.

/s/ Letta Dillard Gorman
Letta Dillard Gorman (GOR026)

Law Office of Letta Dillard Gorman
P.O. Box 983
Geneva, AL 36340
334-258-9148
lgorman1109@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that, on December 4, 2015, I electronically filed the **Reply to Defendant's Motion to Dismiss** with the Clerk of the Court using the CM/ECF system, which will send Notices of Electronic Filing (NEF) to all registered participants and that paper copies will be sent to those counsel listed as non-registered participants on this same date.

/s/ Letta Dillard Gorman
Letta Dillard Gorman (GOR026)

21