UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| TIMOTHY ANDREWS<br>     Plaintiff,<br>  v.<br>CITY OF HARTFORD,<br>     Defendant. | CASE NO. 15-cv-00684-BJR-SRW<br><br>MEMORANDUM OPINION<br>GRANTING DEFENDANT'S<br>MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendant City of Hartford's Motion to Dismiss Plaintiff Timothy Andrews's claims for disability discrimination, failure to accommodate, and retaliation pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and for intentional infliction of emotional distress. After reviewing the briefs and all other relevant material properly before the Court, the Court will grant Defendant's Motion to Dismiss and dismiss Plaintiff's complaint with prejudice. The Court's reasoning follows.

## II. BACKGROUND

In 2009, Plaintiff Timothy Andrews began work as a paramedic for Defendant City of Hartford. (Doc. No. 1, Compl. ¶ 5). Diagnosed with diabetes thirty years ago, Andrews relies on a diabetic pump. (*Id.* ¶¶ 6, 8). Between January and February 2015, Andrews requested accommodations for his diabetes that included sensitivity training for his co-workers and intervention to stop harassment about his diabetes and diabetic pump. (*Id.* ¶¶ 9, 30). The City of Hartford did not provide those accommodations prior to Andrews's termination on February 3, 2015. (*Id.* ¶¶ 10, 43). Andrews successfully performed his duties as a paramedic without any adverse incidents until the events leading up to his termination. (*Id.* ¶¶ 7, 11).

1

On May 21, 2015, Andrews filed charges with the Equal Employment Opportunity Commission ("EEOC").[1] (*Id.* ¶ 26). In his EEOC Charge of Discrimination, Andrews marked only the space labeled "disability" when asked for the basis of discrimination. (Doc. No. 12, Ex. 1). In the space requesting for details of the alleged discrimination, Andrews stated:

> I have a disability. I have worked for Respondent since September 2009 as a Paramedic. On February 3, 2015, Andy Hovey (Fire Chief) terminated my employment. I believe I was terminated because of my disability.
>
> On February 3, 2015, Hovey informed me that I was terminated because on January 26, 2015, as the senior attendant on a call to the Police Department, I failed to take control.
>
> I believe I was discriminated against in violation of Title I of the Americans with Disabilities Act Amendments Act of 2008.

(*Id.*). On June 22, 2015, the EEOC issued a Right to Sue Letter. (Doc. No. 1, Ex. 1).

On September 22, 2015, Andrews filed his complaint alleging that the City of Hartford violated the ADA when it terminated him because of his disability; failed to provide reasonable accommodations; and retaliated against him for making such requests. (*Id.* ¶¶ 33-39, 40-47). Andrews additionally alleges an intentional infliction of emotional distress claim. (*Id.* ¶ 1). On November 3, 2015, the City of Hartford moved to dismiss all claims.

### III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

---

[1] Andrews did not attach his EEOC Charge of Discrimination to his complaint; however, the City of Hartford included Andrews's EEOC Charge of Discrimination as an exhibit to its Motion to Dismiss. (Doc. No. 12, Ex. 1). Courts may consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Because Andrews incorporated his EEOC Charge of Discrimination into his complaint by reference, (Doc. No. 1, ¶ 26), the Court will consider Andrews's EEOC Charge of Discrimination.

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All reasonable inferences should be drawn in favor of the plaintiff. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Significantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

The Court will review Plaintiff's claims in the following order: (1) disability discrimination; (2) failure to provide reasonable accommodations and retaliation; and (3) intentional infliction of emotional distress.

*A.  Disability Discrimination.*

In order to establish a prima facie case of ADA discrimination, a plaintiff must show that he "(1) had a disability; (2) was otherwise qualified to perform the job; and (3) was discriminated against based on his disability." *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005) (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004)). The Court finds that Plaintiff fails to demonstrate a disability under the ADA. Accordingly, the Court confines its discussion to the disability element of an ADA claim.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or

3

(C) being regarded as having such an impairment." 42 U.S.C. §§ 12102(1)(A)-(C) (2012). The Court addresses each definition in turn.

> 1. <u>Plaintiff's disability is not an impairment that substantially limits one or more major life activities.</u>

Section 12102(1)(A) requires a plaintiff to show that he suffers from a physical or mental impairment that substantially limits one or more of his major life activities. Plaintiff suffers from insulin-dependent diabetes, which is a physical impairment for ADA purposes. *See* 45 C.F.R. pt. 84 App. A, subpart (A)(3). Thus, the sole inquiry is whether Plaintiff demonstrates that his diabetes substantially limits one or more of his major life activities.

EEOC regulations define "substantially limits" as an inability "to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii) (2012). Major life activities can include: "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." *Id.* § 1630.2(i)(1)(i).

In his complaint, Plaintiff alleges that he was diagnosed with diabetes thirty years ago and that he now relies on a diabetic pump. (Doc. No. 1, Compl. ¶¶ 6, 8). Defendant contends that Plaintiff's complaint fails to show that Plaintiff's disability "substantially limits one or more [of his] major life activities." (Doc. No. 12, at 10). Defendant is correct. Plaintiff's complaint is silent on how his disability substantially impairs a major life activity.

In his Objection to Defendant's Motion to Dismiss, Plaintiff supplements his complaint, stating that his disability forces him to undress, tend to his pump, and bring in and store special diet foods in the community fridge. (Doc. No. 17-1, at 17-18). This, Plaintiff contends,

4

substantially impairs "more than one of his life activities, to wit walking, talking, breathing, eating, sleeping, thinking, [and] learning." (*Id.*).

The Court remains unpersuaded. Even if the Court could consider facts outside the four corners of the complaint, undressing, tending to a diabetic pump, and bringing in and storing special diet foods does not suggest that Plaintiff is "significantly restricted" in any major life activity as compared to "the average person in the general population." *See Collado*, 419 F.3d at 1156 (holding that monitoring food intake and administering insulin injections does not substantially limit at least one major life activity).

Furthermore, Plaintiff alleges that he successfully performed his duties as a paramedic and maintained an excellent record until the events leading up to his termination. (Doc. No. 1, Compl. ¶¶ 7, 11). Given the strenuous nature of Plaintiff's former employment, the Court cannot conclude that Plaintiff demonstrates, or can demonstrate, that he is substantially limited in any major life activity. *See Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir. 2000) (holding that plaintiff's "diabetes, migraines, and depression" do not substantially limit any major life activity when plaintiff, among other things, held a 40-hour-a-week-job for the previous eight years).

2. Plaintiff has not adduced evidence of a "record of impairment."

Alternatively, a plaintiff may demonstrate a disability under the ADA if that individual adduces evidence of a record relied on by an employer that indicates that the individual has or has had a substantially limiting impairment. *See* § 12102(1)(B); *see also Hillburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999). Such records can include "education, medical, or employment records." *Hillburn*, 181 F.3d at 1229. Plaintiff has failed to adduce any evidence of a record of impairment.

3. <u>Plaintiff was not regarded as having an impairment.</u>

A plaintiff is "regarded as" being disabled if he is perceived by his employer as having an impairment and if his employer significantly restricts his ability to perform a class or range of jobs. *See Rossbach v. City of Miami*, 371 F.3d 1354, 1359-60 (11th Cir. 2004); *see also Collado*, 419 F.3d at 1157. "As with real impairments, courts have held that a perceived impairment must be substantially limiting and significant." *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 913 (11th Cir. 1996).

Plaintiff fails to plead any facts to plausibly demonstrate that Defendant regarded him as being disabled or that Defendant restricted his ability to perform his job, let alone a class or range of jobs. While the complaint indicates that the Defendant was aware of Plaintiff's condition, (Doc. No. 1, Compl. ¶ 16), the "mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled." *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999); *see also Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1217 (11th Cir. 2004) (holding that employer's awareness of employee's diagnosis, in addition to threatening termination and advertising for her replacement, failed to prove that employer regarded her as disabled).

Accordingly, Plaintiff's diabetes does not qualify as a disability under the ADA. The Court therefore dismisses with prejudice Plaintiff's claim of disability discrimination for failure to establish a prima facie case of ADA discrimination.

*B. Failure to Provide Reasonable Accommodations and Retaliation.*

Before filing an ADA claim, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1) (stating a charge must be filed 180 days after the alleged unlawful employment practice); 42 U.S.C. § 12117(a) (applying Title

VII's procedures to the ADA). "The purpose of this exhaustion requirement is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam) (internal quotation marks omitted). Subsequent "judicial claims are allowed if they 'amplify, clarify or more clearly focus' the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." *Id.* (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). Importantly, courts are "'extremely reluctant to allow procedural technicalities to bar [discrimination] claims.'" *Id.* at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61 (5th Cir. 1970)). The proper inquiry therefore is whether Plaintiff's judicial complaint is "like or related to, or grew out of, allegations contained in [the] EEOC charge." *Id.*

Defendant contends that Plaintiff failed to exhaust his administrative remedies with respect to his failure-to-accommodate and retaliation claims. Specifically, Defendant indicates that Plaintiff marked only the space labeled "Disability" when asked for the basis of the alleged discrimination, leaving the space labeled "Retaliation" blank. (Doc. No. 12, at 15). Furthermore, Plaintiff failed to "make any allegations of retaliation or denial of a request for reasonable accommodation in his charge of discrimination." (*Id.*). In response, Plaintiff argues that "he properly exhausted the grievance procedures" when he provided details of his discrimination to the Chief, Mayor, City Council, and Unemployment Compensation Division. (Doc. No. 17-1, at 20-21).

Two cases are instructive on this issue. The first is *Gregory v. Georgia Department of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam), in which a plaintiff filed an EEOC Charge of Discrimination that:

7

>(1) only marked the spaces for gender and race discrimination in the 'charge of discrimination' portion of the template form; (2) indicated that she was hired as a physician/psychiatrist on July 15, 1999, and terminated on February 15, 2000; (3) asserted that she was not given a 'legitimate' reason for her termination; and (4) contended that she 'believe[d]' that she was discriminated against, as she had been an exemplary employee.

Plaintiff's subsequent judicial complaint claimed that her termination "was motivated by her race and/or in retaliation for complaining of . . . race discrimination against her." *Id.* Although plaintiff in *Gregory* did not mark the retaliation space on the EEOC template form, her EEOC charge included the fact that she made complaints to her employer about race discrimination, therefore warranting the Eleventh Circuit's finding that a retaliation claim was reasonably encompassed within her EEOC Charge. *Id.* at 1280-81; *see also Parten v. Ala. Dep't of Tourism*, 100 F. Supp. 3d 1259, 1271 (M.D. Ala. 2015) ("[Plaintiff's] claim that she suffered retaliation for bringing complaints of harassment and sex discrimination to the Personnel Board lawyer is 'like or related to' the claim in her EEOC charge that she was terminated for complaining of harassment to the Governor's office.").

By contrast, in *Green v. Elixir Industries, Inc.*, 407 F.3d 1163 (11th Cir.), *vacated*, 428 F.3d 1008, *replaced by*, 152 F. App'x 838 (11th Cir. 2005), a plaintiff filed an EEOC Charge of Discrimination, checking only the space labeled "Race" as the basis of discrimination and stating the following:

>I. I was employed from March 7, 1995 until my discharge January 2, 2001.  I was terminated for violation of the attendance policy, but I have no written warnings for attendance.  White males that have written warnings and have committed further violations were not terminated.
>
>II. Management stated I was discharged because of violation of the attendance policy.
>
>III. I believe that I have been discriminated against because of my race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

8

407 F.3d at 1166. Plaintiff's subsequent judicial complaint alleged both racial hostile environment discrimination and racially-motivated termination. *Id.* After withdrawing its first opinion, the Eleventh Circuit determined that "all of the factual allegations contained in Green's EEOC charge relate to his termination and none relate to a retaliation claim." 152 F. App'x at 840. Specifically, the court explained that plaintiff "noted the date of his termination as both the earliest and latest date of discriminatory conduct; explained that his termination ostensibly stemmed from attendance policy violations; and stated that white males with inferior attendance records were retained." *Id.* at 840-41. "Nothing in Green's charge related to incidents of harassment, nor did anything mention the dates on which they occurred." *Id.* at 841; *see also Houston v. Army Fleet Servs., L.L.C.*, 509 F. Supp. 2d 1033, 1045 (M.D. Ala. 2007) (holding plaintiff failed to exhaust retaliation claim when "charge [made] no mention of any retaliation," "including any alleged retaliation concerning [employer's] conduct with regard to [plaintiff's] attempts to obtain unemployment benefits").

The Court finds that Plaintiff failed to exhaust his administrative remedies as to his failure-to-accommodate and retaliation claims. The facts in this case are closer to those in *Green* than to those in *Gregory*. Plaintiff's EEOC Charge of Discrimination, (Doc. No. 12, Ex. 1), makes no mention of Plaintiff's request for reasonable accommodations nor how that request led to retaliation in the form of termination.[2] Instead, Plaintiff speaks only of his termination. A

---

[2] Under the ADA, "an employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing 42 U.S.C. § 12112(b)(5)(A)). An accommodation is "'reasonable,' and thus required by the ADA, only if it enables the employee to perform the essential functions of the job." *Id.* Reasonable accommodations include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or polices, the provisions of qualified readers or interpreters, and other similar accommodations for *individuals with disabilities*." 42 U.S.C. § 12111 (emphasis added). The Court finds that Plaintiff's accommodation requests of sensitivity training and intervention to stop bullying were not required by the ADA since Plaintiff is not an individual with a disability under the ADA.

reasonable EEOC investigator could not have concluded from Plaintiff's EEOC Charge of Discrimination that what Plaintiff was complaining about was Defendant's failure-to-accommodate and retaliation.  Consequently, Plaintiff's judicial complaint does not "amplify, clarify or more clearly focus" the allegations in his EEOC charge; rather, his failure-to-accommodate and retaliation claims allege "new acts of discrimination."  This is inappropriate.

Plaintiff's argument that he exhausted his failure-to-accommodate and retaliation claims when he provided details to the Chief, Mayor, City Council, and Unemployment Compensation Division is inapposite.  The ADA requires a plaintiff to exhaust his claims by filing a charge with the EEOC.  *See* 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a).  The Court dismisses with prejudice Plaintiff's failure-to-accommodate and retaliation claims.

  C.  *Intentional Infliction of Emotional Distress.*

Plaintiff alleges that Defendant violated the "state action of intentional infliction of emotional distress."  (Doc. No. 1, Compl. ¶ 1).  Aside from this one allegation, Plaintiff fails to address the elements of intentional infliction of emotional distress nor includes this claim as a separate cause of action.  At the same time, Plaintiff contends that Defendant's actions were "willful" and "malicious."  (*Id.* ¶¶ 36-37, 45).  Thus, the Court will assume that Plaintiff's complaint avers a claim for intentional infliction of emotional distress.

  Section 11-47-190 of the Alabama Code provides the following:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through neglect, carelessness, or unskillfulness of some agent officer, or employee of the municipality engaged in work thereof and while acting in the line of his or her duty.

To state a cause of action under section 11-47-190, a plaintiff must allege a factual pattern that demonstrates "neglect, carelessness, or unskillfulness." *Franklin v. City of Huntsville*, 670 So.2d 848, 852 (Ala. 1995). Plaintiff fails to allege a factual pattern that demonstrates any of these.

Moreover, a claim for intentional infliction of emotional distress requires a plaintiff to show that "'defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Walker v. City of Huntsville*, 62 So.3d 474, 502 (Ala. 2010) (quoting *Green Tree Acceptance, Inc. v. Standridge*, 565 So.2d 38, 44 (Ala. 1990)). The tort of intentional infliction of emotional distress is, therefore, "an intentional tort" and thus barred by section 11-47-190. *Id.*; *see also Brown v. City of Huntsville*, 608 F.3d 724, 743 (11th Cir. 2010) ("[A] city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts [or wanton misconduct] of its employees.").

Even if municipal immunity did not apply, Plaintiff's complaint fails to plead any facts that plausibly support the elements necessary to establish a claim for intentional infliction of emotional distress. Plaintiff fails to address the second element, and scatters "threadbare recitals" of the first and third elements throughout his complaint. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court therefore dismisses with prejudice Plaintiff's claim for intentional infliction of emotional distress.

## V.  CONCLUSION

For the reasons set forth above, the Court will GRANT Defendant's Motion to Dismiss. It is HEREBY ORDERED that Plaintiff's complaint be DISMISSED WITH PREJUDICE. An

Order consistent with this Memorandum Opinion will be separately and contemporaneously issued on this same day, August 2, 2016.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE